Elizabeth M. HEWLETT, Plaintiff,

v.

PREMIER SALONS INTERNATIONAL, INC., Defendant.

No. Civ.A. DKC 96–2639.

United States District Court, D. Maryland.

May 1, 1997.

Stan Derwin Brown, McCarthy, Bacon & Costello, L.L.P., Lanhamn, MD, for Plaintiff.

Maryann S. Cohea, Kaplan, Heyman, Greenberg, Engleman & Belgrad, P.A., for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Plaintiff Elizabeth M. Hewlett, Esq. initiated this lawsuit against Defendant Premier Salons International, Inc. ("Premier") after having been refused service, allegedly on the basis of her race (African–American), at a hair salon then operated by Premier at the Bloomingdale's department store at the White Flint Mall in Kensington, Maryland. In her amended complaint, Plaintiff asserts claims against Premier for (1) violation of 42 U.S.C. § 1981; (2) violation of 42 U.S.C. § 1982; (3) violation of 42 U.S.C. § 2000a; (4) negligent hiring and placement; and (5) negligent training, supervision, and support.[1] Ms. Hewlett, along with Roxanne Jenkins and Gary Butler, also African–Americans, seek to have certified and to represent the class of all African–Americans or persons of Haitian origin who might want service at a Premier salon or who have been refused any service at any Premier salon since December of 1993. Plaintiffs argue that class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3). For the reasons that follow, the court will certify the requested class under Rule 23(b)(2), for the purposes of seeking declaratory and injunctive relief and class-wide punitive damages, at least with respect to Plaintiffs' § 1981 claims.[2] Certification under Rule 23(b)(3) will be denied, and claims for com-

---

1. Additional claims and defendants previously have been dismissed by agreement of the parties.

2. Because Plaintiffs seek to represent a nation-wide class, their state law claims (*i.e.,* negligent hiring and placement; and negligent training, supervision, and support) will not be included within the class action. Plaintiffs' § 2000a (public accommodations) claims are subject to a

pending motion to dismiss or for summary judgment by Defendant, and the court will request additional briefing on this issue in light of the class certification ruling. Furthermore, it is unclear what the factual bases are for Plaintiffs' § 1982 claims, and the court will request briefing on that point as well.

pensatory damages will not be treated on a class basis.

## BACKGROUND

Defendant Premier Salons International, Inc. operates hair and skin salons nationwide, many of which are located in department stores and some of which are free standing. Since 1993, Premier has operated some 1200 salons; Premier currently operates approximately 550 salons located in all 50 states. Premier operates salons in at least ten different department store chains, and almost none of the salons has the word "Premier" in its name.

Ms. Hewlett alleges that on June 14, 1994, she went to the "Bloomingdale's Hair & Skin Salon" in the Bloomingdale's at White Flint Mall. According to Ms. Hewlett, she told an employee of the salon that she wanted to get a wash and blow dry, and perhaps a haircut. Ms. Hewlett alleges that she was told by that employee that she could not have her hair done there because she is "black and ha[s] black hair." According to Ms. Hewlett, she was told that this was "policy," and was referred to another salon located behind White Flint Mall.

Plaintiffs Jenkins and Butler allege that on or about August 28, 1994, they entered the salon at the White Flint Bloomingdale's together and told an employee that they wished to have their hair washed, dried, and styled. According to Ms. Jenkins and Mr. Butler, they were told by the salon employee that "We do not deal with [their] type or texture of hair."

Plaintiffs allege that Premier has a policy of discriminating against African–Americans and persons of Haitian origin (*i.e.*, persons with "black" hair) on the basis of race. Specifically, Plaintiffs point to Premier's official "Policy on Equal Treatment for all Salon Clients," which in essence instructs employees on how to deal tactfully with potential customers who request so-called "ethnic" services such as relaxers and "press and curl," when no one is available at the salon to perform such services. According to Plaintiffs, all licensed hair stylists should be able to perform all types of services on all types of hair. Plaintiffs believe that Premier's policy is discriminatory, because it allows the individual salons to turn "ethnic" customers away, either refusing to provide a particular service altogether, or referring the potential client to another salon where that service is available.

Plaintiffs seek a declaration that Premier's policy is racially discriminatory in violation of federal law, and an injunction against future discrimination by Premier and its salons. Plaintiffs also seek punitive damages, and compensatory damages for the "economic loss, humiliation, embarrassment, emotional distress, and mental anguish" suffered by all of those who have been discriminated against in this manner by Premier. As stated above, Plaintiffs wish to proceed by means of a class action, and seek to have a class certified under Rule 23(b)(2) and/or (b)(3).

The original complaint in this case was filed on August 22, 1996, and received, according to Plaintiffs' counsel, significant publicity. He and his law firm received numerous inquiries from patrons at hair salons who claimed to have been discriminated against. Except for the persons identified in Plaintiffs' amended complaint and Plaintiffs' motion for class certification, however, *none* of the other persons who contacted Plaintiffs' counsel had sought service at a salon operated by Premier.

## CLASS CERTIFICATION

 Class certification is strictly a procedural matter, and the merits of the claims at stake are not to be considered when deciding whether to certify a class. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). A class action determination is left to the sound discretion of the district court, and the court's decision is reversible only for an abuse of discretion. *See, e.g., Buford v. H & R Block, Inc.,* 168 F.R.D. 340, 346 (S.D.Ga.1996) (citing *Jaffree v. Wallace,* 705 F.2d 1526, 1536 (11th Cir.1983), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984)). Some courts have said that doubts regarding the propriety of class certification should be resolved in favor of certification. *See Buford,* 168 F.R.D. at 346 (citing 4 H. Newberg

& A. Conte, *Newberg on Class Actions* § 7540 (3d ed.1992); *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Brown v. Cameron–Brown Co.,* 92 F.R.D. 32, 49 (E.D.Va.1981)); *see also Zapata v. IBP, Inc.,* 167 F.R.D. 147, 156 (D.Kan. 1996) (citing *Esplin,* 402 F.2d at 99; *but see id.* (noting that this statement is not to be read to limit unduly the discretion of the trial judge because discretion may well be the "key to a realistic administration of Rule 23, particularly with respect to a determination of the most fair and efficient procedure") (quoting *Wilcox v. Commerce Bank of Kansas City,* 474 F.2d 336, 347 (10th Cir.1973)).

Certification under Rule 23 involves two steps. First, the proposed class action must satisfy the four prerequisites set forth in Rule 23(a). If those requirements are satisfied, the action must further qualify for one of the three categories of classes in Rule 23(b).

## I. RULE 23(a) REQUIREMENTS

Before a class can be certified through one of the procedures of Rule 23(b), it must first satisfy several prerequisites: .

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

■ The burden of establishing class status is on the Plaintiffs. *See International Woodworkers of America, AFL—CIO, CLC v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1267 (4th Cir.1981). The court is under a duty to undertake a "rigorous analysis" to satisfy itself that the Rule 23(a) requirements have been met. *See General Telephone Co.*

*of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### 1. Numerosity

■ To establish numerosity, the class must be of such a size that joinder of all members is impracticable. "Impracticable does not mean impossible." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). Practicability of joinder depends on factors such as the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion. *Buford,* 168 F.R.D. at 348 (citing *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986)). The size of individual claims is another factor to consider; where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. *Id.* (citing *Luyando v. Bowen,* 124 F.R.D. 52, 55 (S.D.N.Y.1989)).

■ When a class is extremely large, the numbers alone may allow the court to presume impracticability of joinder. *Id.* (citing *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460, 465 (S.D.N.Y.1989); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986)). There is no bright line test for determining numerosity; the determination rests on the court's practical judgment in light of the particular facts of the case. *Id.* (citing *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D.Del.1990)). The class representatives are not required to specify the exact number of persons in the proposed class. *Kernan v. Holiday Universal, Inc.,* 1990 WL 289505, *2 (D.Md.1990) (citing *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir.1989)). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1). *Buford,* 168 F.R.D. at 348 (citing *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981)). In making this determination, "the court is entitled to make common sense assumptions." *Mace v. Van Ru Credit Corp.,* 1995 WL 549088, *3 (N.D.Ill.1995) (citing *Hispanics United v. Village of Addison, Ill.,* 160 F.R.D. 681, 688 (N.D.Ill.1995)), *vacated on other grounds,* 109 F.3d 338 (7th

Cir.1997) (reversing denial of class certification).

■ The case law on this point is not very helpful, given the wide disparity in what numbers the courts have held to be "numerous." *See generally,* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1762, pp. 169–188 (2d ed.1986). In this case, the fact that Plaintiffs have alleged a company-wide policy of discrimination coupled with the number of salons creates a reasonable inference of numerosity. *Cf. Kernan,* 1990 WL 289505 at *2. Furthermore, several factors indicate that joinder would be impracticable: (1) the difficulty of identifying the potential plaintiffs; (2) their likely geographic dispersion given that Premier operates salons in all 50 states; and (3) the likely small size of the individual claims. Defendant argues that the court should not find the numerosity requirement to be met because Plaintiffs thus far have not identified many potential class members despite fairly extensive publicity. Defendant argues that the fact that not many supposed victims have come forward suggests that there are not many. The court finds, however, that the inability thus far of Plaintiffs to identify many class members is better explained by (1) the fact that unsophisticated patrons may not realize that their legal rights potentially have been violated, particularly if they were treated courteously; and (2) the fact that almost none of the salons operated by Premier uses the name "Premier." In sum, the court finds that from the facts as alleged in this case it is reasonable to infer that the class of potential plaintiffs is large, and that joinder of all affected parties would be impracticable.

## 2. Commonality

■ Rule 23(a)(2) requires the individual's claims and the class claims to have common questions of law or fact. Rule 23(a) is relatively easy to satisfy, and very few cases have been dismissed for failing to meet this requirement. *Buford,* 168 F.R.D. at 349 (citing Miller, *An Overview of Federal Class Actions* 25). The inquiry is not whether common questions of law or fact predominate, but only whether such questions exist.

*Zapata,* 167 F.R.D. at 158 (citing *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988)); (7A *Federal Practice and Procedure* § 1763). Minor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law. *Buford,* 168 F.R.D. at 349 (citing *Luyando,* 124 F.R.D. at 55).

■ In discrimination cases, however, it has been said that "[w]ith *Falcon,* the Supreme Court has pulled in the reins on across-the-board attacks. Conclusory allegations of discrimination on a class-basis are not enough." *Zapata,* 167 F.R.D. at 158 (quoting *Stambaugh v. Kansas Dep't of Corrections,* 151 F.R.D. 664, 672 (D.Kan.1993)). "Plaintiffs cannot 'simply leap from the premise that they were the victims of discrimination to the position that others must also have been.'" *Id.* (quoting *Gonzalez v. Brady,* 136 F.R.D. 329, 331 (D.D.C.1991) (quoting in turn *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985)). The key to the commonality requirement in discrimination cases seems to be whether there is evidence of centralized decisionmaking. *See id.* (quoting 5 *Newberg on Class Actions* § 24.21) ("Factual disparities within the class will not bar certification when there are supported allegations of a pervasive policy of discrimination, unless the factual situation of the representative plaintiff is particularly unique. Conversely, an absence of supported allegations by the plaintiff of centralized ... decisionmaking or a showing of decentralization by the defendant may result in a denial or reversal of class certification").

In *Kernan,* a case fairly similar to the instant case, the plaintiffs alleged that Holiday Spas discriminated on the basis of race in the terms that they offered to African–Americans for memberships at their health clubs. The plaintiffs sought to certify a class of all African–Americans who had joined under discriminatory terms, or who had inquired about obtaining memberships and were offered discriminatory terms but did not join. Judge Howard of this court analyzed the commonality issue as follows:

In the present case the discriminatory nature of defendant's organization is the

common issue of law and fact shared by the individual and class plaintiffs. Several allegations in the complaint support this conclusion.

First, the nature of the discrimination alleged suggests that the class of black plaintiffs as a whole is affected. Second, because the class is based on race, class membership is uniform. Third, the defendants' discrimination is allegedly uniform, which is consistent with the number of spas charged with the same conduct, the large geographic area, and a lack of local autonomy. Finally, it is probative that the allegations cover a long time span.

The mere existence of separate facilities, of course, does not negate the possibility of companywide discrimination. In this regard, the plaintiffs allege the nature of the defendants' management organization is centralized and uniform. Accordingly, Fed.R.Civ.P. 23(a)(2) is satisfied.

*Kernan*, 1990 WL 289505 at *3 (citations omitted).

 The court finds Judge Howard's analysis instructive, and believes that Plaintiffs' allegation of a companywide policy of discrimination by Premier supports a finding of commonality in this case that is not negated by the potential factual difference (*e.g.*, type of service requested, whether an individual sought services on an appointment or walk-in basis, and whether an individual was refused service entirely or referred to another Premier salon) in the individual class members' claims.

### 3. Typicality

 The typicality requirement has been observed to be a redundant criterion, and some courts have expressed doubt as to its utility. *Buford*, 168 F.R.D. at 350 (citing *Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F.Supp. 1048, 1056 (N.D.Ga.1986), *aff'd in part, rev'd in part on other grounds sub nom., Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988)). Some courts treat typicality as overlapping with commonality, *see Zapata,* 167 F.R.D. at 160; *cf. Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364 (noting that

typicality and commonality "tend to merge"); other courts equate typicality with adequacy of representation. *Buford,* 168 F.R.D. at 350 (citing *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D.Cal.1991)). Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. *Zapata,* 167 F.R.D. at 160 (citing 1 *Newberg on Class Actions* § 3.13). A plaintiff's claim may differ factually and still be typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (quoting 1 *Newberg on Class Actions* § 3.13). So long as the plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied. *Buford,* 168 F.R.D. at 351 (citing *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D.Ga.1985)). The existence of certain defenses available against plaintiffs that may not be available against other class members has been held not to preclude a finding of typicality. *See id.* (citing *International Molders' and Allied Workers' Local Union No. 164 v. Nelson,* 102 F.R.D. 457, 463 (N.D.Cal.1983)). The burden of showing typicality is not meant to be an onerous one, but it does require more than general conclusions and allegations that unnamed individuals have suffered discrimination. *Kernan,* 1990 WL 289505, at *3 (citing *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 556 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983)).

 In this case, Plaintiffs allege that they, identified class members, and the absent class members suffered the same type of discriminatory treatment (*i.e.,* denial of a hair service—*any* hair service—on the basis of their race at a salon operated by Premier). Furthermore, the relief requested by the class representatives, namely, declaratory and injunctive relief and punitive damages, is compatible with the relief that could be sought by the unnamed class members. *See Kernan,* 1990 WL 289505 at *4. Finally, the

entire class of plaintiffs will be relying on the same legal theories. *See id.* The court finds that the typicality requirement is satisfied.

### 4. Adequacy of Representation

▉▉ Rule 23(a)(4) requires the class representatives to be in a position to protect fairly and adequately the interests of the class. Courts have broken down the requirement into an evaluation of (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the representative's claims are sufficiently interrelated to and not antagonistic with the class's claims as to ensure fair and adequate representation. *Buford,* 168 F.R.D. at 351 (citing *Griffin v. Carlin,* 755 F.2d 1516, 1533 (11th Cir.1985)); *Zapata,* 167 F.R.D. at 160 (citing *Falcon,* 457 U.S. at 157 n. 13, (102 S.Ct. 2364)).

▉▉ In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class. *Zapata,* 167 F.R.D. at 161. Defendant does not seem to challenge the competency of Plaintiffs' counsel in this case, and at the hearing on Plaintiffs' class certification motion, Plaintiffs' counsel indicated that although they have not done any plaintiffs' class action work, he and his law firm have been involved in several class actions.

▉▉ As to the class representatives, there seems to be no conflict between their interests and those of the class. However, courts also sometimes inquire into the knowledge of the representatives and their ability to bear the costs of the litigation. Defendant at the hearing dropped its challenge to the financial fitness of the proposed class representatives when Plaintiffs' counsel indicated that his law firm would be advancing the costs of the litigation, as is common practice in class actions. *See Buford,* 168 F.R.D. at 352 (citing *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir.1991)). Defendant continues to challenge, however, the adequacy of the representatives on the basis of their knowledge regarding the litigation. "A plaintiff whose knowledge of the lawsuit is so wanting that he appears to be no more than a pawn of attorneys who seek a large fee award may be an inadequate class representative." *Kaplan v. Pomerantz,* 131 F.R.D. 118, 121 (N.D.Ill.1990). A plaintiff need not have, however, personal knowledge of all the facts on which the complaint is based, *see Mace v. Van Ru Credit Corp.,* 1995 WL 549088 at *7, nor a considerable amount of legal knowledge. *See Buford,* 168 F.R.D. at 353 (citing *In re Crazy Eddie Sec. Litig.,* 135 F.R.D. 39, 41 (E.D.N.Y.1991)). A plaintiff is an adequate class representative where he understands the purpose of the action, the nature of a class action, and his duties as a class representative. *See Brown v. LaSalle Northwest Nat'l Bank,* 1993 WL 313563, *3 (N.D.Ill.1993). Although the proposed class representatives at their depositions displayed fairly limited knowledge about the proposed litigation, the court is satisfied that they still meet these standards. Furthermore, Ms. Hewlett is an attorney, and the court finds it reasonable to presume that she understands the applicable legal principles and her responsibilities. The court finds that the adequacy of representation requirement is met.

## II. RULE 23(b) REQUIREMENTS

When the requirements of Rule 23(a) have been satisfied, the court must determine which particular type of class action is best suited to the particular case. Plaintiffs argue the class may properly be certified under 23(b)(2) and/or (b)(3).

### A. RULE 23(b)(2)

▉▉ Rule 23(b)(2) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...." The fact that the class plaintiffs seek damages does not preclude certification under this subsection; however, Rule 23(b)(2) certification is appropriate only where the relief sought is primarily injunctive or declaratory. *See Zapata,* 167 F.R.D. at 162 (citing *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995)) and quoting 3B *Moore's Federal Practice* ¶ 23.40[4] ("Many cases have stated

the principle that (b)(2) was not intended to apply where the primary claim is for damages, but is applicable only where the relief sought is exclusively or predominantly injunctive or declaratory...."); *Kernan,* 1990 WL 289505 at *5 (citing *Nelsen v. King County,* 895 F.2d 1248, 1255 (9th Cir.1990); *In re School Asbestos Litig.,* 789 F.2d 996, 1008 (3d Cir.), *cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986)); *see also* 7A *Federal Practice and Procedure* § 1775, at p. 470 (stating that where the Rule 23(a) prerequisites have been met and injunctive relief is sought, the court should go ahead and certify the class under (b)(2); damages can always be tried separately). Where a class is capable of certification under both (b)(2) and (b)(3), the preferred method is to certify under (b)(2). *Kernan,* 1990 WL 289505 at *8 (citing *First Fed. of Michigan v. Barrow,* 878 F.2d 912, 919–20 (6th Cir.1989); *Robinson v. Union Carbide Corp.,* 544 F.2d 1258, 1259–60 (5th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977); *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 252–53 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)); *see also,* 7A *Federal Practice and Procedure* § 1775, at p. 491 (noting that when both subsections apply, the court should certify under (b)(2) because of its wider res judicata effects).

Whether the proposed class should be certified under Rule 23(b)(2) therefore basically turns on whether the claims for injunctive and declaratory relief "predominate" over Plaintiffs' claims for compensatory and punitive damages. In *Kernan,* Judge Howard bifurcated the litigation, so that the issues of liability and class-wide relief would be tried first, with the individual relief, if any, to be determined later. The court believes that this would be the soundest approach to take in this case as well. With the issues thus separated, the court finds that as to the class, the request for declaratory and injunctive relief predominates over the request for punitive damages. *See Kernan,* 1990 WL 289505 at *5–6.

Defendant argues, and some courts have held, that class certification is inappropriate when it serves no useful purpose, *i.e.,* the injunctive relief sought will run to the benefit of the class whether or not a class is certified. *See, e.g., Ruhe v. Block,* 507 F.Supp. 1290 (E.D.Va.1981), *aff'd,* 683 F.2d 102 (4th Cir.1982). According to a leading treatise, however, the trend is for courts to scrutinize this argument more rigorously, and to recognize that there are many reasons why class certification may be necessary or preferable (*e.g.,* that the class action vehicle better fosters the objective of encouraging private litigants to pursue important grievances to deter defendants from engaging in undesirable conduct). *See* 7B *Federal Practice and Procedure* § 1785.2, at pp. 178–187. Furthermore, in social reform litigation like this, it may be in the *defendant's* interest to have a class certified. *See id.* at p. 182 n. 7 (citing Wilton, *The Class Action in Social Reform Litigation: In Whose Interest?,* 63 B.U.L.Rev. 597 (1983)). If Defendant wins this case, it will have the benefit of the finding that its policy is not discriminatory, and will not have to relitigate that issue over and over. The court finds that certification under Rule 23(b)(2) is appropriate.

## B. RULE 23(b)(3)

Rule 23(b)(3) provides that an action may be maintained as a class action if, in addition to meeting the prerequisites of Rule 23(a), the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. These requirements are generally referred to as predominance and superiority. "Although easy to state, these prerequisites become rather opaque when an attempt is made to apply them.... The truth is that if one reads fifty or even a hundred cases involving predominance and superiority, a clear picture of what is happening under Rule 23(b)(3) does not emerge. A DaVinci or Michaelangelo could not draw a straight line through the subdivision (b)(3) cases." *Buford,* 168 F.R.D. at 355 (quoting Miller, *An Overview of Federal Class Actions* 48).

## 1. Predominance

In determining whether the predominance standard is met, courts focus on the issue of liability. *Zapata*, 167 F.R.D. at 165 (citing *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir.1970); *United Telecommunications, Inc. Sec. Lit.*, 1992 WL 309884, *3 (D.Kan.1992)). If the liability issue is common to the class, common questions are held to predominate over individual ones. Where, however, the issue of liability turns on something peculiar to the individual plaintiffs, such as the plaintiffs' responses or states of mind, then common questions have been held not to predominate. *See, e.g., Buford*, 168 F.R.D. at 361 (holding in fraudulent misrepresentation case, that because reliance must be addressed and because each class member's subjective understanding of the status of their loan would have to be analyzed, individual issues predominate over the common issues); *Zapata*, 167 F.R.D. at 166 (noting that in hostile work environment cases, evidence must satisfy both subjective and objective standards, revealing an environment that the plaintiff actually and reasonably perceived to be hostile and abusive; holding that plaintiffs' claims are subjective and individualized in nature and do not lend themselves to class treatment). Furthermore, the nature of the damages sought can militate against class treatment. If the computation of damages following a ruling in favor of the class is largely a mechanical task, then the existence of individualized claims for damages seems to offer no barrier to class certification. *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir.1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978). If, however, the computation of damages will require separate minitrials, then the individualized damages determination predominates over common issues, and a class should not be certified. *Id.*

██ In this case, assuming that Plaintiffs can prove a companywide policy of discrimination, the liability issue seems suited to class treatment. The nature of the individual damages sought (compensatory damages for humiliation, emotional distress, etc.), however, points to a predominance of individual issues. There seems to be no easy, mechanical way to calculate such damages. *Cf. Zapata*, 167 F.R.D. at 163–64 (in connection with superiority inquiry, discussing problems of damages calculations where plaintiffs claim psychological and stress-related injuries). This difficulty can be eliminated separating the class-wide and individual issues for two sets of proceedings. *See Kernan*, 1990 WL 289505 at *6. With the issues thus separated, however, there is no reason to certify under (b)(3) rather than (b)(2).

## 2. Superiority

The superiority test of Rule 23(b)(3) requires the court to find that the class action instrument would be better than, not just equal to, other methods of adjudication. The four factors listed in this subsection (interest in controlling individual prosecutions, existence of other related litigation, desirability of forum, and manageability) are simply a guideline to help the court determine the benefit of the proposed class action. Advisory Committee's Notes to Fed.R.Civ.P. 23.

### a. *Interest in controlling individual prosecutions*

The first factor identified in the rule is "the interest of members of the class in individually controlling the prosecution or defense of separate actions." Fed.R.Civ.P. 23(b)(3)(A). "This factor has received minimal discussion in Rule 23(b)(3) actions." *Buford*, 168 F.R.D. at 361 (quoting 1 *Newberg on Class Actions* § 4.29). According to the drafters of the rule:

> The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic[al] rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable.

Advisory Committee's Notes to Fed.R.Civ.P. 23. This case seems to fall into the latter category, considering the likely relatively small potential individual recoveries, and the

small number of lawsuits that actually already have been filed.

### b. *Existence of other related litigation*

Under Rule 23(b)(3)(B), the court should consider the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class." This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. 7A *Federal Practice and Procedure* § 1780, at pp. 568–69. "If the court finds that several actions already are pending and that a clear threat of multiplicity and a risk of inconsistent adjudications actually exist, a class action may not be appropriate since, unless the other suits can be enjoined, which is not always feasible, a Rule 23 proceeding only might create one more action.... Moreover, the existence of litigation indicates that some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action. Rather than allowing the class action to go forward, the court may encourage the class members who have instituted the Rule 23(b)(3) action to intervene in the other proceedings." *Id.* at 569–70.

This factor does not cut against certification here, because the other related lawsuits have been settled, and all that is currently pending are a few state agency investigations.

### C. *Desirability of forum*

Rule 23(b)(3)(C) requires the court to evaluate the desirability of concentrating the litigation in a particular forum. Because the potential class members are spread throughout the country, because the class representatives and class counsel live here, and because Defendant has counsel here, this forum is as good as any. *See Buford,* 168 F.R.D. at 363 ("the Court recognizes that a class of this magnitude will present certain undesirable characteristics to other courts.... As there is no high concentration of class members in any one forum and seeing that this Court is thoroughly familiar with the facts and law of this case, this forum is as desirable as one

can be"); *Kernan,* 1990 WL 289505 at *6 ("In this case the court finds that it would be desirable to concentrate this litigation in the District of Maryland. First, because the class will only proceed on the issues of defendants' liability to the class as a whole, and the extent of classwide damages, this forum has the advantage of proper venue and personal jurisdiction. Further, the class action phase of this litigation will not require all class members to testify, and accordingly, there will be no burden on distant plaintiffs to travel to this court for trial. If the case proceeds into the second stage of litigation, namely individual damages, the cases could be [returned] to more convenient forums for the plaintiffs. However, in all aspects of this case, considering the second amended complaint encompasses much of the east coast, the District of Maryland is no less convenient than any other forum, and at least has the benefit of its central geographic location").

### d. *Manageability*

The last factor that courts must consider in relation to superiority is the difficulty that may be "encountered in the management of the class action." Fed.R.Civ.P. 23(b)(3)(D). "Of all the superiority factors listed in Rule 23, *manageability* has been the most hotly contested and the most frequent ground for holding that a class action is not superior." *Buford,* 168 F.R.D. at 363 (quoting 1 *Newberg on Class Actions* § 4.32). Some courts have said, however, "[t]here exists a strong presumption against denying class certification for management reasons." *Id.* (citing *In re Workers' Compensation,* 130 F.R.D. 99, 110 (D.Minn.1990); *In re South Central States Bakery Prod. Antitrust Litig.,* 86 F.R.D. 407, 423 (M.D.La.1980)).

The manageability inquiry includes consideration of the potential difficulties in identifying and notifying class members of the suit, calculation of individual damages, and distribution of damages. *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1304 (9th Cir.1990); *Maguire v. Sandy Mac, Inc.,* 145 F.R.D. 50, 53 (D.N.J.1992); *Kernan,* 1990 WL 289505 at *7; *In re Folding Carton Antitrust Litig.,* 88 F.R.D. 211, 216 (N.D.Ill. 1980). In this case, the court finds that

a(b)(3) class would be unmanageable because of the extreme difficulty that would be involved in identifying and verifying class members and giving them the notice that due process requires. This case differs from most in that there is no reason for Defendant to have any records that would aid in the identification of potential class members; the only records that Premier might have would be of people who had made complaints, a list of which Defendant has already turned over to Plaintiffs. Furthermore, even if Plaintiffs were willing and able widely to disseminate notification letters, announcements, etc., it is difficult to conceive of what the contents should be. It would be impracticable to have the notice list all 1200+ salons that Premier has operated during at least some part of the relevant time frame. On the other hand, if just the name "Premier" is used, it seems unlikely that many potential class members will know that they fall within the class definition, because, as stated above, almost none of the salons has used that name. If, however, the notice were addressed to everyone who had gone to a salon in a department store, it would be both under- and severely over-inclusive (Premier operates some free-standing salons, and Premier does not operate anywhere near all of the salons that are located in department stores. Furthermore, Premier has operated some salons for only a portion of the proposed class period, and some other company operated the salon under the same name at other times. For example, Premier ceased operating the "Bloomingdale's Hair & Skin Salon" at the White Flint Bloomingdale's in September 1994).

The nature of the damages claimed in this case also contributes heavily to the potential manageability problem. As discussed above in the section on the predominance requirement, the psychological damages each plaintiff incurred as a proximate result of the alleged discrimination would necessarily require an individual, subjective analysis. *See Zapata*, 167 F.R.D. at 163. Again, this problem can be eliminated by separating the class issues (liability and punitives) from the individual issues (compensatory damages). *See Kernan*, 1990 WL 289505 at *7. As noted above, however, elimination of the compensa-

tory damages issue makes the case a better candidate for (b)(2) certification.

In sum, the court finds that Rule 23(b)(3) certification would not be appropriate in this case. If the issue of compensatory damages were included in the class action, as Plaintiffs presumably want, then individual issues would predominate over class issues. If, however, the individual issues of compensatory damages are separated from the class-wide issues, as the court has decided is the proper approach in this case, then certification is more appropriate under (b)(2). Furthermore, an opt-out class action would not be superior to other methods of adjudication because the problems of identifying and notifying class members would render the class action unmanageable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification under Rule 23(b)(2) is GRANTED; Plaintiffs' motion for certification under (b)(3) is DENIED. Plaintiffs may proceed on a class basis to seek, on behalf of all African–Americans who, from December 1, 1993 to November 1, 1996, were denied any service at a salon operated by Premier, declaratory and injunctive relief and, possibly, punitive damages for Defendant's alleged violations of 42 U.S.C. § 1981. As mentioned above, however, the court requests additional briefing (limited to initial brief by Plaintiffs, opposition brief by Defendant, and reply brief by Plaintiffs) on the other asserted federal causes of action. Specifically, the court would like the parties to address as to 42 U.S.C. § 2000a: (1) whether Premier's salons are places of public accommodation within the meaning of the statute; (2) whether, given the potentially fact-intensive inquiry required as to each salon (as evidenced by Plaintiffs' detailed offer of proof as to the salon at the White Flint Mall Bloomingdale's), this claim is appropriate for class treatment; (3) whether, if some Premier salons are places of public accommodation while others are not, this claim is appropriate for class treatment; and (4) whether the proposed class representatives have complied with the administrative prerequisites to prosecuting a federal complaint under this sec-

tion, and, if not, whether the adequacy of representation requirement can be met for this claim. As to 42 U.S.C. § 1982, the court would like the parties to address (1) the factual basis for the claim; and (2) whether the claim would be common to all class members, and, if not, whether it still is appropriately addressed through the class action as certified.