**Wayne ADAMS, et al., Plaintiffs,**

v.

**William J. HENDERSON, Postmaster General, United States Postal Service, Defendant.**

**No. Civ.A. S–99CV3865.**

United States District Court, D. Maryland.

Nov. 1, 2000.

Charles T. Smith, II, Smith Harvey, P.C., Silver Spring, MD, J. Kirby Fowler, Jr., Ober, Kaler, Grimes & Shriver, Baltimore, MD, John Thomas Ward, Ward, Kershaw and Minton, P.A., Baltimore, MD, Kevin John O'Connor, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Oglathia W. Herbert, plaintiff.

Lynne A. Battaglia, U.S. Attorney, Baltimore, MD, Larry D. Adams, U.S. Attorney's Office, Baltimore, MD, for William J. Henderson, defendant.

### MEMORANDUM OPINION

SMALKIN, District Judge.

The plaintiffs, Mr. Wayne Adams, Mr. John Holmes, Mr. Lloyd Brown, and Ms. Oglathia Herbert filed a complaint against the defendant, William J. Henderson, Postmaster General, United States Postal Service alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* Specifically, the plaintiffs, who are African–American, allege that they were denied opportunities for training and advancement given to similarly-situated white employees. The plaintiffs have brought this action on behalf of themselves and present and former African–American supervisors within the Balti-more District of the United States Postal Service. The plaintiffs seek permanent injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs, and interest.

The case is before the Court on defendant's Motion to Deny Class Certification and Motion for Summary Judgment. The defendant argues in support of its motion for summary judgment that the class representative failed to exhaust his administrative remedies by failing both to contact an EEO counselor and to file the class complaint within the requisite time periods. In support of its motion to deny class certification, the defendant argues that the purported class has failed to meet the requirements of Federal Rule of Civil Procedure 23. The Court has considered the pleadings submitted by the parties, and no oral hearing is necessary. Local Rule 105.6 (D.Md.). For the following reasons, defendant's motion to deny class certification will be GRANTED, and its motion for summary judgment will also be GRANTED.

### BACKGROUND

The plaintiff class' would-be representatives are residents of Maryland, the Baltimore metropolitan area in particular, who are employed as supervisors in the Baltimore District of the United States Postal Service. *See* Compl. at ¶¶ 1–4, 8. Plaintiffs allege that a pattern of discrimination began with the arrival of senior plant manager, Lawrence Fitzpatrick, a white male, at the Baltimore Processing and Distribution Center (P & DC). It is alleged that Fitzpatrick discriminated against African–American employees at the plant by placing lesser-qualified white male employees in temporary "detail" positions that were not advertised to black employees in order to give the white employees specialized experience. Then, without posting opportunities for promotion, Fitzpatrick would allegedly hire less-qualified white males from outside the facility for higher-level positions, thereby bypassing otherwise qualified black employees. *See* Compl. at ¶¶ 18–19. In particular, the defendant promoted a white male, Anthony Pasko, on or about July 14, 1997. In doing so, the defen-

dant "denied Plaintiffs with superior qualifications the opportunity to compete for the position." Compl. at ¶ 25. According to plaintiffs, no black supervisor was promoted during Fitzpatrick's tenure. *See* Pl.'s Opp'n at 4–5.

With respect to the specific allegations of discrimination against the class representatives, the Complaint alleges that plaintiff Wayne Adams, who has worked for the Postal Service since 1970, was awarded details in the past, but did not receive a detail during Fitzpatrick's tenure. Specifically, the Complaint alleges that a lesser-qualified white male was given a detail in place of Mr. Adams. *See* Compl. at ¶ 35. It is alleged that plaintiff John Holmes, who has worked for the Postal Service since 1976, completed detail assignments in the past, but was not given the opportunity to apply for details, nor did he receive any details after Fitzpatrick became Plant Manager. *See* Compl. at ¶¶ 46–48. It is also alleged that Mr. Holmes was discriminated against by other plant managers. *See* Compl. at ¶¶ 45, 50.

It is alleged that plaintiff Lloyd Brown, who began working for the Postal Service in 1970, was also denied the opportunity to complete detail assignments. In particular, it is alleged that he applied for, and was denied, a position in the logistics department, in favor of a white male who had been given the opportunity to complete a detail, a detail Mr. Brown was not given the opportunity to complete. *See* Compl. at ¶ 57. Finally, it is alleged that plaintiff Oglathia Herbert, who began working for the Postal Service in 1973, was denied opportunities for training and advancement that were made available to white employees. In particular, it is alleged that Ms. Herbert was denied a training opportunity that allowed a white female employee to obtain a higher-level position. *See* Compl. at ¶ 67. It is alleged that each of the plaintiffs received positive job performance reviews during their tenures and were well-qualified for promotions.

The plaintiff class representative, Wayne Adams, visited an EEO counselor on July 16, 1997, two days after a white male was promoted. *See* Pl.'s Opp'n at 6. There is a dispute between the parties as to whether Adams completed the paperwork necessary to initiate the EEO process on this date or at a later date. *See* Pl.'s Opp'n at 6, Def.'s Mot. at 11. On September 29 and 30, 1997, counsel for plaintiffs submitted a letter to the EEO Counselor to formalize the counseling process. *See* Pl.'s Opp'n at 33. According to counsel, no response was received from the Postal Service. *See id.* Therefore, on October 6, 1997, counsel for plaintiff contacted the EEO counselor. *See id.*

On October 8, 1997, the Postal Service sent a letter, addressed to plaintiff's counsel, informing counsel that a formal complaint of discrimination was to be filed within 15 days of receipt of the letter. *See* Def.'s Mot. at 11–12, Simmon's Dec., Ex. 4 (including copies of the certified mail receipts). This letter was received by the law firm on October 10, 1997. Due to the Postal Service's use of an incorrect case number on the first letter, a second letter was sent on October 10, 1997, which was received by plaintiffs' counsel on October 14, 1997. *See id.* The plaintiffs filed a class complaint with the United States Postal Service on October 30, 1997, alleging race discrimination in the award of promotions and the assignment of special details. On August 5, 1999, an EEOC administrative judge (AJ) recommended that the Postal Service accept the plaintiffs' class complaint. *See* Def.'s Mot., Simmons Dec., Ex. 8. On September 27, 1999, the Postal Service rejected the EEOC recommendation and dismissed the complaint. *See id.,* Ex. 9. Plaintiffs filed this action on December 27, 1999. The plaintiffs bring this action on behalf of "[a]ll black supervisors who presently work for the U.S. Postal Service (Baltimore District) or who worked for the U.S. Postal Service (Baltimore District) on and after January 1, 1997." Compl., ¶ 68.

### ANALYSIS

#### I. Request for Discovery Denied

At the outset, the plaintiffs request that this Court delay consideration of defendant's summary judgment motion in order to allow time for discovery. *See* Pl.'s Opp'n at 12, 35. The request is denied, because the plaintiffs have failed to properly request a continuance

under Fed.R.Civ.P. 56(f), which requires them to file an affidavit setting forth the reasons why more discovery is necessary. Federal Rule of Civil Procedure 56(f) provides:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. Fed.R.Civ.P. 56(f).

The plaintiffs have failed to comply with the requirements of this rule by failing to file an affidavit outlining their reasons for requiring more discovery. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 n. 6, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Fourth Circuit has held that " '[a] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir.1995) (citations omitted). Therefore, because the plaintiffs not only failed to submit an affidavit, but also failed even to allude to Rule 56(f) in their opposition, their request for additional discovery is denied.

## II. Complaint was Untimely

### A. Standard for Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to summary judgment as a matter of law. In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248,

106 S.Ct. 2505. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but the opponent must bring forth evidence upon which a reasonable fact finder could rely. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson,* 477 U.S. at 253, 106 S.Ct. 2505.

### B. Title VII Standard

Title 42, Section 2000e–16 of the United States Code governs employment discrimination actions brought by federal government employees. It states that "[a]ll personnel actions affecting employees or applicants for employment [in the federal government] shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–16(a).

### C. Complaint was Untimely

■ The defendant argues that summary judgment should be granted in its favor, first, because the plaintiffs failed to initiate counseling within the requisite 45–day period (as required by 29 C.F.R. § 1614.105(a)(1)), and second, because they failed to file their complaint within 15 days of receipt of the notification of the right to file the complaint (as required by 29 C.F.R. § 1614.204(c)(2)). Because the Court finds that the complaint was not timely filed, and the complaint may be dismissed on this ground alone, *see Blount v. Shalala,* 32 F.Supp.2d 339, 341 (D.Md.1999) *aff'd* 199 F.3d 1326 (4th Cir. 1999), the Court need not address whether the time requirements for obtaining counseling were met.

■ The return receipt indicates that the letter of notice of the right to file was received by the office of plaintiffs' counsel on October 14, 1997.[1] *See* Def.'s Mot., Simmons Dec., Ex. 4. The complaint was filed with the Postal Service on October 30, 1997, 16 days later.[2] Courts have strictly enforced timely-filing requirements in the federal employment area, dismissing, for example, a complaint that was filed 16 days after receipt of the notice of the right to file, rather than within the requisite 15–day period. *See Blount,* 32 F.Supp.2d at 341. The plaintiffs argue that their attorney's receipt of the notice was delayed until October 15th because of the defendant's failure to address the notice to any particular attorney in the 80–person law office. *See* Pl.'s Opp'n at 34. This argument fails because time is measured from the time the notice was received in the attorney's *office,* not by the time it was received by the particular attorney handling the case. In *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court considered whether the period for filing a civil action with the court under 42 U.S.C. § 2000e–16(c) begins to run at the time a right-to-sue letter is delivered to office of counsel of the plaintiff, even if the attorney had no actual notice of receipt of the letter at that time. *See id.* at 91–92, 111 S.Ct. 453. The Court determined that the period begins to run at the time the notification letter is received in the attorney's office, and not when the attorney receives actual notice. In making this determination, the Court

> reject[ed] [the plaintiff's] contention that there is a material difference between receipt by an attorney and receipt by that attorney's office for purposes of § 2000e–16(c). The lower federal courts have consistently held that notice to an attorney's office which is acknowledged by a representative of that office qualifies as notice to the client.... The practical effect of a

contrary rule would be to encourage factual disputes about when actual notice was received, and thereby create uncertainty in an area of the law where certainty is much to be desired. *Id.* at 93, 111 S.Ct. 453.

Therefore, the date the letter was received and acknowledged, October 14, 1997, will be the date from which time is calculated. It should be noted that the first letter was received on October 10, 2000, and, although it did not include the case number, it might arguably have imparted notice at an earlier date. Either way, the complaint was not filed within the requisite 15–day period.

While it is true that this time requirement acts as a statute of limitations and is thus subject to waiver, estoppel, and equitable tolling, *see* 29 C.F.R. § 1614.604(c) and *Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), none of these principles applies here.

■ Plaintiffs first argue that the defendant is estopped from asserting that the plaintiffs' complaint was filed late. They argue that the Postal Service's "own sloppy mailing practices" delayed the plaintiffs' receipt of the letter informing them of their right to file a complaint. *See* Pl.'s Opp'n at 3. In order to invoke the estoppel doctrine, "a Title VII plaintiff must prove that the defendant engaged in affirmative misconduct intended to mislead or deceive [the plaintiff] into missing the deadline." *Blount,* 32 F.Supp.2d at 341 (citing *Nealon v. Stone,* 958 F.2d 584, 589 (4th Cir.1992) and *Zografov v. Veterans Admin. Medical Ctr.,* 779 F.2d 967, 968–69 (4th Cir.1985)). Although the Postal Service's failure to include the individual attorney's name on the mailings and its use of the wrong case number on the first letter could legitimately be called "sloppy mailing practices," the plaintiffs have presented no evidence to show that these practices were intentionally carried out to cause the plain-

---

1. This was the second letter received by plaintiffs' counsel. The first letter was sent by the Postal Service on October 8, 1997, and was received on October 10, 1997. *See* Def.'s Mot., Simmons Dec., Ex. 4. This letter did not contain the proper case number, however, and therefore, a second letter was sent on October 10, 1997, which was received on October 14, 1997.

2. In calculating the 15 day period, time began to run on the day after the letter was received, October 15, 1997, and ended the 15th day thereafter, which was October 29, 1997. The 29th was a Wednesday and thus did not fall on a weekend. *See* 29 C.F.R. § 1614.604(d).

tiffs to miss the filing deadline, even if negligent. The letter was sent to the correct address and was in fact received by the appropriate counsel within a day of the letter's arrival in the mail room of the firm. *See* Pl.'s Opp'n., Smith Dec. at ¶ 10. Furthermore, the complaint that was ultimately filed was dated October 22, 1997, suggesting that counsel had time to send it to the Postal Service in a timely manner. *See* Def.'s Mot., Simmons Dec., Ex. 6. None of the evidence suggests that the Postal Service's behavior was intentional as opposed to careless. Carelessness does not give rise to equitable tolling or estoppel.

In addition, a finding of estoppel is inappropriate here, because there is no evidence that the plaintiffs relied on the Postal Service's failure to include the attorney's name on the letter by delaying their filing of the complaint. As noted above, the complaint was dated October 22, 1997, suggesting that the complaint could have been filed in a timely manner. The Fourth Circuit has stated that "a necessary element of any estoppel is reliance by the party claiming the estoppel." *Tidewater Equip. Co. v. Reliance Ins. Co.*, 650 F.2d 503, 506 (4th Cir.1981). Therefore, plaintiffs have no grounds to assert that the Postal Service is estopped from claiming that the complaint was untimely filed.

Plaintiffs argue secondly that the Postal Service was itself untimely in its filing of its rejection of the EEOC decision, thus "depriving it of the clean hands necessary for it to assert its argument against Plaintiffs." *See* Pl.'s Opp'n at 3. Specifically, the plaintiffs allege that the Postal Service failed to issue a final order within 30 days of receipt of the Administrative Judge's recommendation as required by 29 C.F.R. § 1614.204(d)(7) (1999).[3] The letter accompanying the AJ's recommendation was dated August 24, 1999. The final order was issued by the Postal Service on September 27, 1999. Plaintiffs base their argument solely on the assumption that the AJ's recommendation "did not take three days to reach its destination." Pl.'s Opp'n at 7 n. 1. This evidence is plainly

insufficient to invoke the defense of unclean hands.

The Postal Service provided evidence in its reply that the recommendation was received on August 27, 1999. *See* Def.'s Reply at 7, Ex. 1. The 30-day period would have expired September 26, 1999, which was a Sunday. Based on this evidence, the final order was timely filed on Monday, September 27, 1999. Even if plaintiffs were to dispute this evidence, defendants correctly cite to Fed. R.Civ.P. 6(e), which provides that service by mail is presumed to be received within three days. Under this presumption, the Postal Service should have received the recommendation on August 27, 1999, three days after the date of the letter. *See Nguyen v. Inova Alexandria Hosp.*, 187 F.3d 630, 1999 WL 556446, * 3 (4th Cir.1999) (unpublished opinion) (citing *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). Either way, the final agency decision was timely filed on September 27, 1999.

Furthermore, the Fourth Circuit, recently applying Maryland law, has stated that "[t]he unclean hands doctrine allows a court to reject the claim of a party who is guilty of 'willful wrongdoing in relation to the controversy before it.'" *Lyon v. Campbell*, 217 F.3d 839, 2000 WL 991650, at *3 (4th Cir.2000) (unpublished opinion) (quoting *Bland v. Larsen*, 97 Md.App. 125, 137, 627 A.2d 79 (1993) (quoting *Manown v. Adams*, 89 Md.App. 503, 511, 598 A.2d 821 (1991), *vacated on other grounds*, 328 Md. 463, 615 A.2d 611 (1992))). The plaintiffs have presented no evidence that the Postal Service engaged in any willful wrongdoing.

■ Finally, plaintiffs argue that this Court should follow the Administrative Judge's finding that the complaint was timely filed. *See* Pl.'s Opp'n at 3, 34. This argument is also unavailing to the plaintiffs. As defendant notes, this action is proceeding *de novo*, and therefore this Court is not required to defer to the AJ's decision. *See Chandler v. Roudebush*, 425 U.S. 840, 863–64, 96 S.Ct. 1949, 48 L.Ed.2d 416, (1976)

---

**3.** This 30-day requirement reflects the regulation in effect in August of 1999. The regulation has since been amended to require the agency to issue a final order within 40 days of receipt of the administrative judge's decision. 29 C.F.R. § 1614.207(d)(7) (2000).

(holding that federal employees are entitled to a trial *de novo* ); *Wade v. Secretary of the Army,* 796 F.2d 1369, 1376–77 (11th Cir.1986) ("No deference may be accorded the agency or complaints examiner's findings with respect to the employee's compliance" with regulatory requirements.). Furthermore, the AJ made a recommendation which the Postal Service ultimately rejected in its final agency decision. The plaintiffs had the choice to appeal the Postal Service's final decision to the EEOC, but they chose instead to file a civil action, entitling them to a trial de novo.[4] *See* 29 C.F.R. § 1614.204(d)(7). While the Court's lack of obligation to defer to the AJ's decision may be an unforeseeable consequence of the filing of a civil action in this Court, it is nonetheless a cornerstone of de novo review that must be followed. Having concluded that there are no circumstances under which the filing requirement would be subject to waiver, estoppel, or equitable tolling, the complaint must be dismissed. *See Blount,* 32 F.Supp.2d at 341–42 (dismissing a complaint that was not filed within the requisite 15–day period for failure to exhaust administrative remedies).

### III. Class Certification Will Be Denied

#### A. Requirements of Federal Rule of Civil Procedure 23(a)

The Supreme Court has made clear that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Federal Rule of Civil Procedure 23(a) provides that:

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Fourth Circuit has held that "district courts have broad discretion in deciding whether to certify a class." *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 757–58 (4th Cir.1998), *vacated on other grounds,* 527 U.S. 1031, 119 S.Ct. 2388, 144 L.Ed.2d 790 (1999) (citing *In re Catawba Indian Tribe,* 973 F.2d 1133, 1136 (4th Cir.1992)). Furthermore, the burden of satisfying the class certification requirements of Rule 23 is on the plaintiff. *See Stastny v. Southern Bell Tel. and Tel. Co.,* 628 F.2d 267, 276 (4th Cir.1980).

■ In their complaint, the plaintiffs request that the class be composed of black supervisors who work within the Baltimore District. *See* Compl., ¶ 68. The Baltimore District includes many facilities throughout Maryland. In later pleadings filed with this Court, the plaintiffs state that this action was brought on behalf of "approximately 44 African–American supervisors of the Baltimore *office* of the United States Postal Service." Pl.'s Opp'n at 1 (emphasis added). The complaint refers only to events that occurred at the Baltimore P & DC (Processing & Distribution Center). *See* Def.'s Mot. at 23–24. Furthermore, the class representatives allege that all of the class members suffered discrimination at the hands of Larry Fitzpatrick, who was the senior plant manager at the Baltimore PD & C. *See* Pl.'s Opp'n at 2. Therefore, this Court will consider the class as being comprised of those African–American supervisors who work or formerly

---

4. Two circuit courts have held that an agency waives its right to assert that the complaint was untimely filed when the agency failed to appeal an EEOC decision of timeliness. *See Briones v. Runyon,* 101 F.3d 287, 290–91 (2d Cir.1996); *Girard v. Rubin,* 62 F.3d 1244, 1246–47 (9th Cir.1995). In both of these cases, the agencies had issued Final Agency decisions that the complaints were untimely filed which the plaintiff appealed. On appeal, the EEOC found that the

complaints were timely filed. The agencies sought no further review of these decisions. Unlike these cases, the EEOC AJ in this case made a *recommendation* that the Postal Service accept the complaint as timely filed. The Postal Service rejected this finding, however, and dismissed the complaint. The plaintiffs never appealed this decision. Therefore, this line of cases does not apply here and the Postal Service did not waive its right to assert an untimeliness defense.

worked for the Baltimore PD & C since January 1, 1997.

■ Based on a consideration of the requirements necessary to certify a class pursuant to Rule 23, plaintiffs' request for class certification must be denied because they have not demonstrated that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a). The Fourth Circuit has stated that "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied. The issue is one primarily for the District Court, to be resolved in the light of the facts and circumstances of the particular case." *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). Courts consider a number of factors in considering whether joinder is practicable including "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 215 (D.Md.1997).

The facts involved in this action appear to be similar to facts addressed in a rather dated, yet still binding, opinion of the Fourth Circuit. In *Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34, 35–36 (4th Cir.1978), the Fourth Circuit upheld a district court's determination that Title VII plaintiffs had failed to satisfy the numerosity requirement. The district court based its finding in part on the fact that "all 67 of the black employees and all eight identified as qualified for promotion work at the facility and lived in the Norfolk area." *Id.* at 35. Because the class members lived and worked in the area, the court concluded that joinder would not be impracticable, reasoning that others who felt they were discriminated against could easily intervene. *See id.* Similarly, in this case, all of the current and former employees are or were employed at the same facility in Baltimore, Maryland. The class representatives all reside in the Baltimore area, and it would be reasonable to assume that others who currently work at the facility, or who worked there during the past four years, also reside in this area. Therefore, it does not appear that the class members would be so geo-graphically dispersed such that their joinder would be impracticable, as in a case where discrimination is alleged to have occurred at facilities across the nation. *See, e.g., Hewlett*, 185 F.R.D. at 216 (finding that "[the plaintiffs] likely geographic dispersion given that Premier operates salons in all 50 states" is a factor favoring an inference of numerosity). As the defendant indicates, the plaintiffs themselves acknowledge that class members may be easily identified from employment records. *See* Compl., ¶ 75. Finally, no evidence has been presented to show that any of the class members are located outside of the Baltimore metropolitan area or that service upon them would be difficult. Therefore, joinder would not be impracticable and the numerosity requirement has not been satisfied.

The Court need not address the requirements of commonality, typicality, and adequacy of representation, because even assuming these factors were satisfied, the lack of numerosity alone defeats class certification.

## B. Requirements of Federal Rule of Civil Procedure 23(b)

In addition to satisfying the prerequisites of Rule 23(a), plaintiffs must also satisfy one of the three requirements of 23(b). The plaintiffs argue that the class should be certified either under Rule 23(b)(2) or 23(b)(3). Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." In their complaint, the plaintiffs have requested both injunctive relief as well as compensatory and punitive damages.

■ The Advisory Committee Notes to 23(b)(2) state that "[t]he subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Thus, the question as to whether certification can be made under this section involves a determination of whether the relief sought is primarily injunctive or declaratory. *See Zimmerman v. Bell*, 800 F.2d 386, 389–90 (4th Cir.1986); *Hewlett*, 185 F.R.D. at 218. In *Hewlett*, this Court solved

the problem by separating the individual issues of compensatory damages from the class issues regarding liability and injunctive relief in order to certify the class pursuant to (b)(2). *See id.* at 222. The Fourth Circuit has addressed the issue of damages for back pay in connection with class certification under 23(b)(2) but not the question of whether 23(b)(2) certification is appropriate when compensatory and punitive damages are sought. *See Robinson v. Lorillard,* 444 F.2d 791, 801–02 (4th Cir.1971) (finding that back pay is an equitable remedy and thus 23(b)(2) certification was still appropriate).

Other circuit courts, though, have squarely addressed this issue. In *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998), the court concluded that in a Title VII suit brought for both injunctive relief and compensatory damages, the compensatory damages "are not incidental to class-wide injunctive or declaratory relief for discrimination" and therefore certification is not appropriate under 23(b)(2). *Id.* at 417. The court explained that "[g]iven the degree to which recovery of compensatory and punitive damages requires individualized proof and determinations, they clearly do not qualify as incidental damages. . . ." *Id.* at 418. Therefore, the court found that the district court did not abuse its discretion in denying class certification under 23(b)(2). *See id.*

The court's conclusion was premised on the notion that "monetary relief 'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case." *Id.* at 413. Rule 23(b)(1) and 23(b)(2) do not include procedural safeguards for notice and opting out of a class while Rule 23(b)(3) does contain those safeguards in 23(c)(2). The court noted that "[p]roviding these rights exclusively to (b)(3) classes dem-

onstrates concern for the effect of monetary claims on class cohesiveness." *Id.* Thus, a claim for primarily money damages is not appropriate for 23(b)(2) certification because certain procedural protections are not provided to class members.

In *Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894 (7th Cir.1999), the Seventh Circuit considered the same issue and reiterated the conclusion, based on the Supreme Court's opinion in *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), that "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out." *Jefferson,* 195 F.3d at 898.[5]

The Fourth Circuit has cited with approval to a case in which the Tenth Circuit upheld a district court's decision to deny class certification under Rule 23(b)(2) based on the fact that the relief sought was primarily money damages. *See Lowery,* 158 F.3d at 758 (citing *Boughton v. Cotter Corp.,* 65 F.3d 823, 827 (10th Cir.1995)). The *Lowery* court stated that in making the decision to certify a class, a district court "may appropriately consider factors other than those listed in Rule 23 in determining whether to certify a class action." *Lowery,* 158 F.3d at 758.

Based on the case law from other circuits addressing this issue, the Court finds that certification is not proper under 23(b)(2) because the plaintiffs' claims for compensatory and punitive damages are not incidental to their claims for injunctive relief, but rather are the predominant form of relief sought by the plaintiffs.

■ Furthermore, certification is likewise improper under Rule 23(b)(3) because common questions do not predominate over those affecting individual members. Rule 23(b)(3) provides for certification when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual mem-

---

5. The Supreme Court in *Ortiz* suggested that class action claims for money damages implicate due process concerns. *See Ortiz,* 527 U.S. at 846–47, 119 S.Ct. 2295. The *Jefferson* court also suggested two other certification options, other than certification under 23(b)(3), when claims

for money damages predominate over claims for injunctive relief, including dividing the injunctive and monetary claims for certification purposes, or certifying under 23(b)(2) while providing for notice under 23(d)(2). *See Jefferson,* 195 F.3d at 898.

bers, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Certification is not proper under this section because of the individualized liability inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons, and the individualized damages inquiries that inevitably accompany a claim for compensatory and punitive damages. The issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each class member. This will require individualized evidence as to the qualifications of the persons who applied for and received promotions, as well as the qualifications of the persons who were denied those promotions. Furthermore, if "the computation of damages will require separate mini-trials, then the individualized damages determination predominates over common issues, and a class should not be certified." *Hewlett*, 185 F.R.D. at 220 (citing *Windham v. American Brands, Inc.*, 565 F.2d 59, 67–68 (4th Cir.1977)); *see also Allison*, 151 F.3d at 419 ("The plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole....").

Rule 23(b)(3) also requires the Court to determine that a "class action is superior to other available methods for the fair and efficient adjudication of the controversy," taking into account, among other things, the manageability of the suit as a class action. The individual damage determinations that must be made would make this suit highly difficult to manage as a class action. *See Allison*, 151 F.3d at 419; *Hewlett*, 185 F.R.D. at 222. Therefore, the Court finds that the class has not met the requirements for class certification under 23(b)(3) or 23(b)(2). Accordingly, the defendant's motion to deny class certification will be granted.

### CONCLUSION

In light of the above, a separate order will be issued GRANTING the defendant's motion for summary judgment and GRANTING the defendant's motion to deny class certification.