**Shawn TALLEY, et al., Plaintiffs,**

v.

**ARINC, INCORPORATED, et al., Defendants.**

**No. CIV.A. RDB–02–3925.**

United States District Court, D. Maryland, Northern Division.

July 14, 2004.

Benjamin W. Hahn, Hahn, Kyle and Hollrah LLP, Washington, DC, David C. Weaver, Ruble and Weaver PA, Frederick, MD, Edward Patrick McDermott, Law Offices of E. Patrick McDermott LLC, Annapolis, MD, for Plaintiffs.

Anita Barondes, Christopher A. Weals, David Michael Burns, Seyfarth Shaw, Washington, DC, for Defendants.

## MEMORANDUM OPINION

BENNETT, District Judge.

Five Plaintiffs instituted this lawsuit against the Defendant ARINC, Incorporated ("ARINC") and the individual Defendants, Robert Manigold, and Leonard Kotz, executives in ARINC's Human Resources Division, alleging employment discrimination on the basis of race and gender. In response to the class allegations set forth in the Complaint, the Defendants filed a Motion to Strike the Plaintiffs' class action allegations, contending that class certification is inappropriate under Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). In light of these allegations, the Court granted the Plaintiffs' request for discovery on the class certification issue. After the completion of that discovery, the parties briefed the question with supporting affidavits. A hearing was then conducted to permit a full factual record to be presented to the Court. For the reasons that follow, this Court will GRANT the Defendants' Motion to Strike the Plaintiffs' class action allegations.

### Background

On December 3, 2002, Plaintiffs Shawn Talley, Lawrence Branch, Rita Miller, Teresa Anderson and Angela Hall (collectively the "*Talley* Plaintiffs") brought this action individually and on behalf on two proposed classes. Plaintiffs' Complaint alleges that their former employer, Defendant ARINC, practiced company-wide discrimination against minorities and females in the areas of promotion, salaries and layoffs. The Defendants filed a Motion to Strike the class action allegations contained in Plaintiffs' Complaint on July 30, 2003.

To enable Plaintiffs to fully respond to Defendants' Motion to Strike, the Court granted Plaintiffs' request to conduct limited discovery on the class certification issue. All such discovery and briefing on the Motion to Strike was completed on April 2, 2004. A full-day hearing on the Motion to Strike was held on June 30, 2004.

At that hearing, Plaintiffs' counsel amended the proposed classes to include a nationwide class consisting of all African American current and former employees of ARINC who suffered discrimination in pay and promotion based upon the policies promulgated by Defendants Kotz and Manigold. In addition, Plaintiffs now seek to represent all female ARINC current and former employees who suffered discrimination in pay and promotion based upon the policies promulgated by Defendants Kotz and Manigold.

While Defendants' Motion to Strike has been pending, Plaintiffs sought leave to amend their Complaint to add two additional plaintiffs, Jacqueline Parham and Carol Wells. Both Ms. Parham and Ms. Wells are former ARINC employees.[1] On February 11, 2004, Ms. Parham and Ms. Wells, along with Anthony Baxter, Linda Johnson, Iris Godette, Fonda Shepard, and C'mon Allen (collectively the "*Wells* Plaintiffs"), filed a separate action seeking to represent the same class of minority and female former employees and alleging the same class-wide discrimination as is alleged in the instant case. *See Wells v. ARINC,* RDB–04–424. Though Defendants' Motion to Strike addressed only the class action allegations in this action, Plaintiffs' counsel conceded that consideration of the class certification issue should encompass both cases.[2] Pursuant to Rule 23(d)(4), the Court, on its own volition, will extend this ruling to both cases.

### Statement of Facts

Defendant ARINC is a government contractor that provides engineering and technical services to defense and civilian agencies including the Federal Aviation Administration. ARINC has over 3,000 employees and has offices in twenty-four states, the District of Columbia and many foreign countries, with

---

1. Plaintiffs' Motion to Amend its First Amended Complaint was rendered moot by the filing of the companion action, *Wells v. ARINC,* RDB–04–424.

2. Specifically, Mr. McDermott stated of the two cases, "we're treating them as one." Hr'g Tr. at 4 (6/30/2004).

its headquarters in Annapolis, Maryland. As a government contractor, ARINC is required to comply with federal anti-discrimination laws. To ensure its compliance with those laws, ARINC is required to submit its personnel policies for periodic review by the Department of Labor, Office of Federal Contract Compliance ("OFCCP").

The Defendants Leonard Kotz and Robert Manigold work in the Human Resources and Administration Department at ARINC. Defendant Kotz is ARINC's Director of Human Resources. Defendant Manigold is ARINC's Vice–President of Human Resources. Both executives work in the Annapolis office, and all of the Plaintiffs, with one exception, were employed in the Annapolis office.

### The Talley Plaintiffs

Shawn Talley is an African American male who worked as ARINC's Senior Human Resources Representative in the Human Resources Division from March 1, 1999 to January 11, 2002. Talley's supervisors were Betty Smith and Len Kotz. Talley contends that he did not receive the commensurate title or salary increase that he deserved, when he was forced to take on half of Betty Smith's duties. Smith was the outgoing Human Resources Manager. Talley also claims that he was given lower evaluation ratings due to his race, resulting in his being placed on a performance improvement plan.

Teresa Anderson is an Asian–American female who worked as a senior program manger at ARINC's SkySource services division. Her supervisor was Robert Richard. Anderson contends that she was not selected to oversee the shutting down of the SkySource program because of her gender. She also alleges that ARINC's decision to a permit a male outside contractor to stay in a position that should have been given to her was motivated by gender.

Rita Miller is an African American woman who was hired as a secretary in ARINC's Aviation and Air Traffic Services Division and was later promoted to Program Analyst in that same department. Her supervisor was Dave Poltorak. Like Anderson, Miller complains that she was not allowed to oversee the shutting down of the SkySource program. Miller also alleges that she applied for the position of Web Developer, but was told that she was not qualified. She contends that she was qualified for the job, and that she was not considered due to her race and gender.

Lawrence Branch is an African American male who worked as a Product Planner in ARINC's Sales and Marketing department. His supervisors were Faye Francy and Fred Wynn. Branch complains that he was not given a salary grade increase and job title upgrade when his supervisor left the department. Branch also alleges that he was not allowed to participate in a bonus program in which non-minority employees were allowed to participate.

Angela Hall is an African American female who worked in ARINC's RVSM program from 1989 through 2000. She claims that she was denied promotion to junior analyst on the basis of her race.

### The Wells Plaintiffs

Carol Wells is an African American woman who worked for ARINC as a computer operator in the Network Administration Division from September 5, 1978 until she retired on May 21, 2003. Wells claims that she was never promoted because of her race, and that she was assigned the duties of a Caucasian woman without the commensurate pay raise or promotion. Her supervisor was Rebecca Robson.

Jacqueline Parham is an African American woman who was a Human Resources Manager in ARINC's Human Resources Department from April 24, 2000 to July 31, 2003. Len Kotz was her supervisor. Although she was promoted twice in three years of employment, Parham alleges that she should have been given the title of Human Resources Manager when she was forced to take on half of the workload of Betty Smith, the outgoing Human Resources Manager. Parham also alleges that she received lower evaluation scores than she deserved based on her race, resulting in a lower salary and smaller bonuses. In addition, Parham claims that she personally witnessed Kotz and Manigold exercise systematic race and gender discrimination.

Anthony Baxter is an African American man who currently works as an engineer in the Network Application Tools Department of ARINC's Technology and Support Services division. His supervisor is Mike McCormick. Baxter alleges that McCormick gave him lower performance ratings than he deserved based on his race and that he received lower pay and fewer promotions as a result.

Linda Johnson is an African American woman who worked as an administrative assistant in ARINC's Transportation and Energy Systems Department from May 8, 2000 until December 27, 2002. Dennis Lengyel was Johnson's supervisor. Johnson contends that she was denied a promotion due to race and was discriminated against with regard to pay on the basis of her race. Iris Godette is an African American woman who is ARINC's current Director of Business Process Re-Engineering in the Corporate Business Development department. Godette was previously supervised by Richard Napolitano, and is now supervised by Al Lewis. Godette alleges that she did not receive the pay commensurate with her positions, and that she was denied bonuses and salary increases due to her race.

Fonda Shepard is an African American woman who worked as a manager in ARINC's System Test Group. Her supervisors were Mike McCormick and Peter Flynn. She began working for ARINC on May 26, 1987. She contends that she was denied a grade and salary increase on the basis of her race.

C'mon Allen was a Human Resources Associate in the Human Resources division at ARINC from April 2001 through July of 2002. Her supervisor was Jacqueline Parham. Allen avers that she was given a lower performance rating than she deserved on the basis of her race.

### Common Facts

The majority of the named Plaintiffs worked or work at ARINC's Annapolis, Maryland headquarters. Aside from Annapolis, and the Washington, D.C. location, there are no named Plaintiffs from any of ARINC's other offices located in twenty-four states. With the exception of Talley, Parham and Walker (who worked in the Human Resources Division), none of the Plaintiffs allege that either Kotz or Manigold played any role in the challenged employment decisions.

In his capacity as a Senior Human Resources Representative, Shawn Talley served as ARINC's Affirmative Action Officer. His duties included serving as a point of contact between ARINC and the company's outside counsel regarding federal audits of ARINC's compliance with mandatory anti-discrimination policies. Talley was also responsible for responding to employee complaints of discrimination and formal complaints filed with the Equal Employment Opportunity Commission ("EEOC"). Talley played some role in investigating and responding, on behalf of ARINC, to the discrimination complaints of Plaintiffs Rita Miller and Teresa Anderson.

Jacqueline Parham was also a manager in ARINC's Human Resource Department. Like Talley, Parham was responsible for responding to internal complaints of discrimination and formal complaints filed with the EEOC. In this capacity, Parham was involved with the investigation of and response to complaints by Plaintiff Lawrence Branch.

While Parham and Talley were involved with investigating and responding to discrimination claims, the other named Plaintiffs had no such role.

### Class Certification Standard

Federal Rule of Civil Procedure 23(c) requires this Court to determine, "at an early practicable time," whether a proposed class meets the requirements set forth in Rule 23. In making this determination, courts are required to "look beyond the pleadings and conduct a 'rigorous analysis' of whether the particular factual and legal theories alleged warrant class treatment." *Gariety v. Grant Thornton, LLP.*, 368 F.3d 356, 367 (4th Cir. 2004). In light of this, Rule 23 contemplates "controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." *Id.* at 366 (quoting Rule 23 advisory committee's note to 2003 amendments).

Nine months were afforded to Plaintiffs to conduct discovery on the class certification issue. Based on the discovery obtained, Plaintiffs submitted extensive briefs in support of class certification along with affidavits, documentary and statistical evidence. Moreover, this Court conducted a full-day hearing on class certification. The Court thus has an ample record on which to base the Rule 23 determination.

Plaintiffs bear the burden of establishing that their proposed class complies with the strictures of Rule 23. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir.2001). To meet this standard, Plaintiffs must first present sufficient evidence to support a finding by this Court that they have satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). If the Court finds that those prerequisites are satisfied, Plaintiffs must also demonstrate that the proposed classes fit into one of the categories enumerated in Rule 23(b) and satisfy standards of maintainability. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). In this case, Plaintiffs' proposed classes fail to satisfy at least three of the Rule 23(a) prerequisites.[3] Plaintiffs classes also fail under the Rule 23(b) maintainability requirements.

### Analysis

#### A. Rule 23(a) Requirements

##### 1. Commonality

■ Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." In the context of discrimination cases, courts have recognized that commonality exists when the alleged discrimination is such that liability for discrimination can be determined on a class-wide basis. *See*

*Stastny v. Southern Bell Tel. and Tel. Co.*, 628 F.2d 267 (4th Cir.1980). As Judge Motz of this Court has noted, this requirement "is more easily met when a disparate impact rather than a disparate treatment theory underlies a class claim."[4] *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462, 470 (D.Md. 2002) (Motz,J.) *aff'd sub nom. Skipper v. Giant Food Inc.*, 68 Fed.Appx. 393 (4th Cir. 2003) (quoting *Stastny*, 628 F.2d at 274 n. 10). This flows from the fact that, unlike disparate impact, disparate treatment allegations are, by nature, individual. These kinds of cases typically demand specific factual inquiries and individual analysis before liability can be assessed. *See Carson*, 187 F.Supp.2d 462. No commonality exists, as a matter of law, when such individual inquiry is required. *Zimmerman v. Bell*, 800 F.2d 386 (4th Cir. 1986).

■ To demonstrate commonality under a disparate impact theory, Plaintiffs must produce evidence of an "identifiable employment pattern, policy or practice that demonstrably affects all of the class in substantially, if not completely, comparable ways." *Stastny*, 628 F.2d at 273. Under those circumstances, the uniform pattern or practice is such that the Court can determine liability as to all class members by examining the merits of the policy or practice at issue. *See id.* However, as Judge Chasanow of this Court recognized, "[c]onclusory allegations of discrimination on a class-wide basis are not enough." *Hewlett v. Premier Salons International, Inc.*, 185 F.R.D. 211, 216 (D.Md. 1997) (quoting *Zapata v. IBP, Inc.* 167 F.R.D. 147, 156 (D.Kan.1996)). Moreover, "[p]laintiffs cannot 'simply leap from the premise that they were the victims of discrimination to the position that others must also have been.'" *Hewlett*, 185 F.R.D. at 216 (quotations omitted). Instead, Plaintiffs must submit reliable evidence of a defined

---

**3.** Defendants contend that Plaintiffs have failed to produce sufficient examples of discrimination to satisfy the numerosity requirement. While the court recognizes that the numerosity question is a closer one, the Court need not make a determination as to numerosity given the many other problems with Plaintiffs' proposed classes.

**4.** Although Plaintiffs initially asserted both disparate impact and disparate treatment theories, at the June 30, 2004 hearing before this Court, Plaintiffs' counsel abandoned the disparate impact claims. In response to a question from the Court, Plaintiffs' counsel acknowledged that "any reasonable juror would conclude" that this case is a disparate treatment case, not a disparate impact case. Hr'g Tr. at 77.

pattern or practice of discrimination that, if proven true, would establish liability on the part of all Defendants with respect to all class members. *See id.*

Here, Plaintiffs have introduced anecdotal and statistical evidence that they contend demonstrates such a pattern and practice of discrimination. The crux of their theory is that Leonard Kotz and Robert Manigold exercised "centralized decision-making" authority to sanction, encourage and personally participate in race and gender discrimination against the named Plaintiffs and potential class members. In support of this "pattern," Plaintiffs submitted affidavits, documentary evidence and statistical analysis. Taken together, however, this evidence does not demonstrate a sufficiently cohesive "pattern" to satisfy the commonality requirement of Rule 23(a)(2).

Plaintiffs correctly contend that other judges in this Court have certified classes based on disparate treatment classes in which evidence of "centralized decision-making" was present. *See Newsome v. Up-to-Date Laundry*, 219 F.R.D. 356 (D.Md.2004) (Quarles, J.) (finding commonality where employees at a single location were subjected to the same alleged hostile work environment); *Buchanan v. Consolidated Stores Corp.*, 217 F.R.D. 178 (D.Md.2003) (Chasanow, J.) (holding that commonality existed where a company's policy not to accept checks in minority neighborhoods denied minority customers the same check cashing privileges); *Hewlett*, 185 F.R.D. 211 (Chasanow, J.) (finding commonality between African American customers allegedly denied service at a hair salon where there was specific evidence that the policy was "centralized and uniform" throughout the company). In each of those cases, however, the alleged pattern or practice was sufficiently centralized and defined so as to eliminate the need for individualized inquiries on liability. *See Newsome*, 219 F.R.D. 356; *Buchanan*, 217 F.R.D. 178; *Hewlett*, 185 F.R.D. 211.

In contrast to the facts of those cases, the evidence before the Court simply does not support Plaintiffs' contention that Kotz and Manigold exercised this kind of "centralized decision-making" authority over the proposed class members. The centralized decision-making theory seems entirely derived from the bald accusations made by the Plaintiffs themselves. Yet, even Plaintiffs' own affidavits fail to specify how Kotz and Manigold influenced the pay and promotion decisions of all of the named Plaintiffs, let alone the proposed class members. Furthermore, Plaintiffs have no response to evidence submitted by Defendant ARINC that reveals that ARINC's pay and promotion decisions are made by individual managers, with no involvement by Kotz or Manigold. ARINC has also introduced undisputed evidence to establish that the company adheres to a rigid set of policies and procedures that is periodically audited for compliance with discrimination laws by the federal government.

Plaintiffs' statistical evidence lends no additional support to their "centralized decision-making theory." As a preliminary matter, Plaintiffs have failed to establish what role, if any, that Kotz or Manigold played in producing the alleged statistical disparities that they purport to identify. Beyond that, Plaintiffs' statistical evidence fails to establish a pattern of discrimination, even independent of Kotz and Manigold.

The bulk of Plaintiffs' statistical proof is derived from the "statistical analysis" conducted by their own expert, Dr. Ruth Obar.[5] Dr. Obar presents several sweeping conclusions concerning the disparities in pay and promotion at ARINC while revealing neither her methodology nor the data upon which she relied in reaching the conclusion. Nevertheless, the flaws in Dr. Obar's analysis are apparent from information that she has provided.

First, Dr. Obar concludes that, "non-whites received fewer promotions than whites" from

---

5. Plaintiffs also rely upon documents and statistics from the Department of Labor, Office of Federal Contract Compliance ("OFCCP"). These statistics relate only to two ARINC facilities-Annapolis, Maryland and Panama City, Florida. Plaintiffs have failed to provide any additional statistics to establish pay or promotion disparities at any of ARINC's other locations. Moreover, Plaintiffs have provided no analysis to suggest that the OFCCP data is capable of being generalized to ARINC's other locations.

July 1, 1997 to the present. In reaching that conclusion, however, Dr. Obar apparently failed to consider the number of employees who received no promotion during that period-a key factor in determining whether a disparity existed. This omission stems from the fact that Plaintiffs failed to request that data in discovery.

Dr. Obar also made other findings regarding promotion. She observed that, between 1998 and 2000, only seven of the 124 management promotions were given to African Americans, and in the year 2000, no management promotions went to African Americans. Dr. Obar failed to disclose, however, how many employees were in the relevant pool of qualified candidates. The Fourth Circuit has held that the relevant applicant pool must be considered in determining disparities in promotion. *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir.1994) (rejecting statistics that merely showed an absence of minority workers in upper-level positions without comparing the statistic to the qualified applicant pool).

Finally, Dr. Obar concluded that "white employees received more bonuses than black employees" and that the average bonuses received by blacks were smaller than those received by whites. Once again, Dr. Obar failed to specify several key facts necessary to evaluate the validity of her conclusions. Her affidavit failed to specify whether she controlled for ratios of blacks compared to whites. This is crucial to any analysis.

In light of these obvious inconsistencies, Plaintiffs' statistical evidence does not establish a pattern of discrimination at ARINC. *See generally Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 995, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (on the reliability requirements for statistical evidence); *EEOC v. United Va. Bank/Seaboard Nat'l*, 615 F.2d 147, 152 (4th Cir.1980) (same). Despite their best efforts, Plaintiffs have failed to demonstrate the existence of any discriminatory pattern or practice that would bind the proposed classes together on the question of liability. What remains is an aggregation of individual discrimination claims that require-and deserve-individual adjudication. As a consequence, there is no basis for a finding of commonality as to the proposed classes.

## 2. *Typicality*

■■■ Some courts have observed the typicality requirement to be a redundant criterion that merges with the commonality analysis. *Hewlett*, 185 F.R.D. at 217 (citations omitted). The requirement determines "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Bullock v. Board of Education*, 210 F.R.D. 556, 560 (D.Md.2002) (Chasanow, J.) (citations omitted). Plaintiffs' claims may differ factually and still be "typical" of the claims of class members if the claims arise "from the same event or practice or course of conduct that gives rise to the claims of other claims members, and if his or her claims are based on the same legal theory." *Id.*

■■ In this case, the named Plaintiffs have failed to establish any common "event, practice, or course of conduct" that would render their claims typical of the absent class members they seek to represent. Instead, Plaintiffs have aggregated several individual complaints that require individualized proof and give rise to individualized defenses. These specific complaints clearly allege racial and sexual discrimination. However, these allegations are in the context of disparate treatment of different individual Plaintiffs. This case does not present the factual scenario of a discriminatory practice being applied so as to broadly discriminate against persons in the identical manner.[6] Plaintiffs' claims therefore fail to satisfy the typicality requirement of Rule 23(a).

## 3. *Adequacy of Representation*

■■■ The final prerequisite under Rule 23(a) is that the persons representing the

---

6. The facts of this case contrast with the facts of the very authorities relied upon by Plaintiffs in this regard. *See Newsome*, 219 F.R.D. 356 (the same class of workers were all denied the same opportunity to work overtime); *Buchanan*, 217 F.R.D. 178 (store customers all denied same check cashing privilege); *Hewlett*, 185 F.R.D. 211 (hair salon customers all denied same type of service).

proposed class must be able "fairly and adequately to protect the interests" of all members of the class." The adequacy inquiry under Rule 23(a)(4) serves to uncover lack of common interests between named parties and the class they seek to represent. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157–158, n. 13, 102 S.Ct. 2364, 2370–2371, n. 13, 72 L.Ed.2d 740 (1982). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). Representation will be considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof v. State Farm Mutual Auto. Insurance Co.,* 200 F.R.D. 521, 530 (D.Md.2001) (Messitte, J.). There are multiple conflicts between and among the class members and between and among the classes in this case that preclude the proposed class representatives from adequately representing the interests of absent class members.

The first conflict results from the fact that Plaintiff Talley and *Wells* Plaintiff and putative class member Parham were managers in ARINC's human resources division. In that capacity, both Talley and Parham handled the discrimination complaints of other named Plaintiffs and an unknown number of the putative class members. For example, Talley personally investigated Plaintiff Rita Miller's discrimination claim and responded to that complaint on behalf of ARINC. Parham also played a direct role in the investigation of and response to the discrimination complaint of her co-Plaintiff Lawrence Branch.

This involvement is particularly troublesome in light of the fact that ARINC's investigation of (or failure to investigate) Plaintiffs' discrimination complaints will be an important issue in deciding ARINC's liability and in assessing ARINC's defenses. Their direct role in handling discrimination complaints places Talley and Parham squarely at odds with their co-plaintiffs and,

more importantly-with the putative class members whose complaints they may or may not have investigated. Plaintiffs acknowledge that Talley and Parham have first-hand knowledge as to ARINC's response to the discrimination complaint. It is therefore possible, and even probable, that Plaintiffs' class counsel may be forced to cross-examine their own clients (and class members) based on statements they made and actions they took on ARINC's behalf. In light of this, there is simply no way the named Plaintiffs in this case can adequately represent the interests of the absent class members. *See Ostrof,* 200 F.R.D. at 526 (recognizing that conflicting adverse interests that impact on the liability or defenses of class members defeats adequacy); *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331 (4th Cir.1998) (holding no adequacy of representation where certain class members signed a contract clause that precluded them from claiming damages where other class members were entitled to claim damages).

In addition, there are conflicts between the class members themselves. Talley and Parham, for instance, both contend they should have received the same job. Talley claims that he "replaced" Betty Smith and was therefore discriminated against when he did not receive her title, grade or salary. Parham also claims she should have been promoted to Smith's position, because Smith's duties were split between her and Talley. Another such conflict stems from the fact that Plaintiff Hall failed to file a timely charge with the EEOC. That fact alone places her interests in conflict with the legal interests of the putative class members who filed their claims properly. These conflicts only highlight the fact that Plaintiffs' highly individualized claims are not appropriate for class certification.

There are also clear conflicts inherent within the classes as Plaintiffs have defined them. Counsel for the Plaintiffs has defined classes of African American employees, both past and present, as well as female employees, both past and present. One immediate conflict is thus apparent from the fact that an African American male, who is a named Plaintiff, complains that he was denied a

promotion in favor of a qualified female. This conflict is exacerbated by the fact that many of the named Plaintiffs and proposed class members are members of both proposed classes. An additional conflict arises between current and former employees. The interests of former employees is clearly monetary damages for past alleged mistreatment. Conversely, the interests of current employees may be in the area of injunctive relief separate from monetary damages.[7]

■ While some conflicts may arise between plaintiffs in any class, this Court has a duty to ensure that there are "structural assurance[s] of fair and adequate representation for the diverse groups and individuals" that comprise the proposed class. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 627, 117 S.Ct. 2231, 2251, 138 L.Ed.2d 689 (1997). Plaintiffs have provided this Court with no such assurances, and have therefore failed to satisfy the adequacy of representation requirement of Rule 23.

### B. *Rule 23(b) Requirements*

■ While Plaintiffs' failure to satisfy the 23(a) prerequisites is dispositive, the Court also finds that Plaintiffs cannot establish the maintainability requirements set forth in Rule 23(b).[8] Plaintiffs urge the Court to certify a class under Rule 23(b)(2) for injunctive relief. However, Rule 23(b)(2) certification is not proper where, as here, "the final relief that would be appropriate were Plaintiffs to prevail would not be injunctive in nature but would relate exclusively or predominantly to money damages." *Carson v. Giant Food, Inc.*, 187 F.Supp.2d 462 (D.Md.2002) (Motz, J.) (citations omitted); *see also Adams v. Henderson*, 197 F.R.D. 162, 172 (D.Md.2000) (Smalkin, J.) (recognizing that Rule 23(b)(2) certification is not appropriate where, as here, "the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and the merits of each potential class member's case"). Unlike Rule 23(b)(2), Rule 23(b)(3) encompasses additional notice and opt-out provisions that are designed to protect the interests of absent class members who have a significant individual stake in the outcome of the litigation. *Adams v. Henderson*, 197 F.R.D. at 171. That rationale is fully applicable in this case because each named Plaintiff and potential class member could see a large individual recovery based solely on the individual discrimination that they allege.

■ Plaintiffs must therefore satisfy the Rule 23(b)(3) requirements that "the common questions of law or fact predominate over questions affecting individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs cannot satisfy that standard.

■ The Fourth Circuit has recently reaffirmed the well-settled principle that cases requiring individualized proof of damages fail to satisfy the predominance requirement. *Gunnells v. Healthplan Services*, 348 F.3d 417 (4th Cir.2003); *Gariety v. Grant Thornton, LLP.*, 368 F.3d 356 (4th Cir.2004). Other Judges on this Court have applied this principle to reject proposed disparate treatment classes similar to the classes proposed here. *See, e.g., Adams*, 197 F.R.D. at 172; *Carson*, 187 F.Supp.2d at 472 (holding that "the highly individual nature of Plaintiffs' individual [discrimination claims] ... preclude certification under Rule 23(b)(3)"). Judge Smalkin of this Court aptly summarized the rationale for declining to certify such classes:

> Certification is not proper under [Rule 23(b)(3)] because of the individualized liability inquiries involved with determining whether each class member was denied advancement and promotional opportunities for discriminatory reasons ... The issue of liability will depend on the circumstances surrounding each individual employment decision, relating to each member. This will require individualized

---

7. All of the named Plaintiffs in *Talley* are former employees. Because the Court is considering the class allegations with respect to both *Talley* and *Wells* cases, the Court notes that two of the *Wells* Plaintiffs are current employees of ARINC.

8. Plaintiffs do not seek certification under Rule 23(b)(1).

evidence as to the qualifications of the persons who applied for and received promotions, as well as the qualifications of the persons who were denied those promotions.

*Adams,* 197 F.R.D. at 172. In an opinion affirmed by the Fourth Circuit, Judge Motz similarly held that the widely varying circumstances underlying the plaintiffs' race discrimination allegations necessitated individualized liability inquiries that defeated predominance. *See Carson,* 187 F.Supp.2d 462.

The facts of the instant case highlight the individualized liability inquiries noted above. Plaintiffs worked at different locations, had different supervisors, held wholly different types and levels of jobs (e.g. engineers, managers, computer operators), and allege pay and promotion disparities occurring under vastly different conditions. Were this Court to certify such a class, the trial would collapse into individual minitrials on the merits of and defenses to each class member's claim. Hence, this Court finds neither that "the common questions of law or fact predominate over questions affecting individual members" nor that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

### Conclusion

In rendering this decision, this Court is cognizant of the fact that "when a district court considers whether to certify a class action, it performs the public function of determining whether the representative parties should be allowed to prosecute the claims of absent class members." *Gariety v. Grant Thornton, LLP.,* 368 F.3d 356, 366–67 (4th Cir.2004). Based on the facts of this case, class certification would not do justice to the interests of the named Plaintiffs or absent proposed class members. For the foregoing reasons, Defendants' Motion to Strike Plaintiffs' Class Action Allegations is GRANTED. Pursuant to Rule 23(d)(4), the class action allegations will be stricken from pleadings in this case and in *Wells,* RDB 04–424, and both actions will proceed accordingly. The Court will issue an Order consistent with this Opinion.

*ORDER*

For the reasons stated in the foregoing Memorandum Opinion, it is this 14th day of July 2004, by the United States District Court for the District of Maryland, hereby ORDERED:

That the Defendants' Motion to Strike the Plaintiffs' class action allegations (Paper 23) is GRANTED.